

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AB:RMS
F. #2023R00320

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 26, 2023

By Hand and ECF
The Honorable Peggy Kuo
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Gerald DeRosse
Case No. 23-MJ-383

Dear Judge Kuo:

Later today, the defendant Gerald DeRosse will appear before Your Honor for arraignment upon the above-referenced complaint (the "Complaint"). The United States respectfully moves for a detention hearing pursuant to 18 U.S.C. § 3142(f)(1)–(2) and submits that the defendant should be detained because he is a danger to the community and a flight risk, and no combination of conditions can mitigate these risks.

## I. Background

As described in the Complaint, the defendant committed a violent, brazen robbery at a neighborhood bank in Glendale.

Shortly before noon on April 6, 2023, the defendant entered a branch of Ridgewood Savings Bank, came up behind an elderly customer, grabbed her around the neck, and yelled that he was going to "blow her fucking brains out" if the bank teller did not give him money. The bank teller obeyed the defendant's demand and gave him cash containing a dye pack. The defendant then fled. When the dye pack went off outside the bank, he dropped the money and ran.

The robbery was captured on the bank's video surveillance system, and screenshots from the recording are attached hereto as Exhibit A

## II. Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the

defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence, United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995), and risk of flight must be proven by a preponderance of the evidence, United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." United States v. Millan,4 F.3d 1038, 1048 (2d Cir. 1993) (internal quotation marks omitted).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, including whether the offense involves a controlled substance or a firearm; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

The possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. See United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee."); United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (explaining that the lengthy maximum combined term of imprisonment faced by the defendant "created potent incentives to flee"); United States v. Dodge, 846 F. Supp. 181, 184–85 (D. Conn. 1994) (explaining that the possibility of a "severe sentence" heightens the risk of flight); accord United States v. Cisneros, 328 F.3d 610, 618 (l0th Cir. 2003) (finding that the defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.").

Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130–31 (2d Cir. 2000). In the pre-trial context, few detention hearings involve live testimony or cross-examination; rather, most proceed on proffer. LaFontaine, 210 F.3d at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted); see also United States v. Mercedes, 254 F.3d 433, 437 (2d Cir. 2001) ("[The defendant] has twice been convicted of weapon possession—one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to [the defendant's] dangerousness.").

Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

## III. Argument

Every § 3142(g) factor counsels heavily in favor of the defendant's detention. As outlined below, the United States more than meets its burden of showing by clear and convincing evidence that the defendant poses a danger to the community based on his physical violence and threats during the robbery. Moreover, his extensive criminal history, his demonstrated disregard for court supervision, the overwhelming evidence of his criminal conduct, and the high penalties he faces all demonstrate by a preponderance of the evidence that the defendant poses a flight risk.

### A. The Defendant's Danger to the Community

The crime charged in this case are extremely serious, as the defendant manhandled and threatened an elderly woman in the course of a bank robbery. In doing so, the defendants terrified the customers and employees present in the Ridgewood Savings Bank branch that Thursday morning; indeed, one customer hid under a desk during the course of the robbery.

As described in greater detail below, the defendant's history of committing robberies shortly after being released from prison provides strong evidence that he will continue to be a danger to the community if released by today.

### B. The Defendant's Risk of Flight

#### 1. Defendant's History and Characteristics

First and foremost, the defendant has demonstrated that he is a risk of flight precisely because he already has refused to comply with court supervision. The defendant was on parole at the time he committed this robbery; indeed, he had been released from prison less than a month before he walked into that neighborhood bank on April 6th.

At 54 years old, the defendant has spent a significant portion of his adult life in custody owing to various robbery and other convictions in violation of New York law, including the below.

- In June 2011, he was convicted of First-Degree Robbery (Use/Threatens Use Of Dangerous Instrument) and Third-Degree Robbery for crimes committed while on parole for the robbery conviction described below. He was sentenced to 13 years' imprisonment. Upon his release from prison, the defendant was placed under supervision of the New York State Department of Corrections and Community Supervision in March 2022, just weeks before committing the instant robbery.

- In May 1995, he was convicted of two counts of First-Degree Robbery (Displays What Appears To Be A Firearm), for which he was sentenced to 15 years' to life imprisonment. The defendant was released from prison in January 2010, a little more than a year before committing the 2011 robbery described above.

- In May 1990, he was convicted of Grand Larceny in the Third Degree, for which he was sentenced to two to four years' imprisonment.

- In October 1986, he was convicted of Possession of Stolen Property in the Second Degree, for which he was sentenced to one to three years' imprisonment.

- In June 1985, he was convicted of Grand Larceny in the Second Degree, for which he was sentenced to one to three years' imprisonment.

That the defendant was on parole when he committed the instant robbery and a prior robbery indicates that no condition or supervision has deterred him from committing further crimes. Based on his criminal history and demonstrated record of completely disregarding post-conviction supervision, there is little reason to believe that he will comply with conditions of pre-trial supervision if he were released by this Court.

2. Severe Penalties

As a result of his notable criminal history and the nature of the offense charged in the Complaint, the defendant faces significant penalties prescribed by law, giving him substantial incentive to flee. "When faced with the possibility of a significant prison term, defendants have a strong incentive to flee." United States v. Edwards, 2021 WL 796089, at *2 (E.D.N.Y. Mar. 2, 2021). The United States preliminarily estimates that the defendant's Sentencing Guidelines range for the charged conduct is 155 to 188 months' imprisonment. The Second Circuit has found that the possibility of a severe sentence—including a sentence well below the length that the defendant faces—can establish flight risk. See United States v. Scali, 738 F. App'x 32, 33 (2d Cir. 2018) ("The court reasonably determined that [the defendant]'s Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee.").

3. Weight of the Evidence

There is significant evidence of the defendant's commission of the charged offense. The defendant was unmasked before, during, and after the robbery. Video surveillance captured the defendant on Myrtle Avenue, wearing a white hooded sweatshirt with the word "Champion" across the chest, 25 minutes before the robbery, and also captured him wearing that same sweatshirt (just with the hood raised) inside the bank, committing the robbery. The parole officer assigned to supervise the defendant—and who had in-person meetings with the defendant as recently as March 2023—positively identified him as the man in a screenshot from that video surveillance. Moreover, following his arrest on April 25, 2023, the defendant waived his Miranda rights and admitted to committing the robbery at Ridgewood Savings Bank.

Where, as here, the evidence of guilt is strong, it provides "a considerable incentive to flee." United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); accord United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (explaining that where "the evidence against defendants is strong, the incentive for relocation is increased").

## IV. Conclusion

For the foregoing reasons, the United States respectfully requests that the Court issue a permanent order of detention against the defendant.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/
Rebecca Schuman
Assistant U.S. Attorney
(718) 254-7202

cc: Defense Counsel (by email)

# Exhibit A


04/06/2023 11:37:07.93
Teller 1
Surveillance
GlendaleIP


04/06/2023 11:37:10.53
Teller 1
Surveillance
GlendaleIP